# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs March 29, 2006

## STATE OF TENNESSEE v. BRIAN LEE CABLE

**Direct Appeal from the Circuit Court for Blount County**
**No. C-14668     D. Kelly Thomas, Jr., Judge**

_____

**No. E2005-00608-CCA-R3-CD - Filed May 19, 2006**

_____

The defendant, Brian Lee Cable, was convicted by a Blount County jury of two counts of aggravated burglary, a Class C felony; two counts of theft over $10,000, a Class C felony; two counts of burglary, a Class D felony; and four counts of theft over $1000, a Class D felony.   The trial court sentenced him as a Range I, standard offender to three years for each of the Class C felonies and two years for each of the Class D felonies, imposed fines totaling $22,000, and ordered restitution totaling almost $18,000.  Finding the defendant to be an offender whose record of criminal activity is extensive, the trial court ordered that all his sentences be served consecutively, for an effective sentence of twenty-four years in the Department of Correction.  On appeal, the defendant challenges the aggregate length and manner of service of his sentences, arguing that the trial court erred in denying his request for alternative sentencing, in ordering consecutive sentences, and in imposing excessive fines without regard to his ability to pay.  Finding no error, we affirm the judgments of the trial court but remand for entry of corrected judgments in Count 8 to reflect that the sentence is to be run consecutively to the sentence in Count 7, instead of Count 6, and in Count 2 to reflect that no fine was imposed for that count.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed and Remanded for Entry of Corrected Judgments**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and J.C. MCLIN, JJ., joined.

Julie A. Rice, Knoxville, Tennessee (on appeal), and Raymond Mack Garner, District Public Defender (at trial), for the appellant, Brian Lee Cable.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Rocky Young, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The convictions in this case stem from the defendant's participation in a number of burglaries and thefts that occurred over a period of time and involved several different victims and thousands of dollars worth of stolen items, including household furnishings and appliances, four-wheelers, lawn equipment, and an assortment of hand and power tools. In the most egregious case, the defendant and his accomplices broke into an out-of-state resident's vacation home and took almost every item that could be removed from the property, including the home's kitchen cabinets and toilets. The defendant's accomplices were brothers Jonathan and Alberto Reynolds, the grandsons of the defendant's stepmother.

The defendant did not testify at trial but provided the following version of the crimes for his presentence report:

> Jonathan Aaron Reynolds and Alberto Reynolds would bring items to me wanting me to buy them or trade. I was heavily medicated on doctor prescriptions not really knowing the strong consequences. Until I realized it was very wrong I wish I never got involved, because I want to be a part of my son's life forever and go to church, and work hard for what I get.

At the March 7, 2005, sentencing hearing, the twenty-eight-year-old defendant testified that he was single, a high school graduate, and the father of three children, ages 10, 9, and 2. He said that he married in 1996 or 1997 when he was 19 and that his two older children were the product of that marriage. The marriage ended in divorce in 2001 or 2002, and the children currently lived with their maternal grandparents. The defendant testified that he had never paid child support for the older children and had never been allowed any visitation with them. He said his youngest child, a son, was the product of a relationship with a former girlfriend and was currently in the custody of the State of Tennessee. The defendant acknowledged he was not paying child support for the youngest child. He testified, however, that he was in the process of trying to gain custody of the child and, to that end, had attended parenting classes.

The defendant testified he had been charged with burglary in Sevier County in 1996 and had pled guilty to a reduced charge of vandalism. He claimed, however, that he pled guilty only to prevent his ex-wife from being charged with the crime. He said his wife had gone, without the owner's permission, into a house trailer with some minors and remained inside while the minors vandalized the property. According to the defendant, someone sent him to the trailer to check on the property and he was subsequently charged with the crime because he was the only adult at the scene. He testified: "Well, they was saying that I was in there, and I wasn't. And my wife – my ex – the woman that I married was in there. So, I pleaded out so that it – you know, so she didn't get charged with it."

The defendant acknowledged that he was charged in 1998 with an assault in Jefferson County and an assault in Sevier County. He blamed the Jefferson County assault charge on his ex-wife, explaining that she had falsely claimed that he had struck her during an incident in which she had been under the influence of drugs and had tried to force her way into his house. The defendant testified that he proved he had not hit her and that the charge was consequently dismissed. He testified that the Sevier County assault charge, which had resulted in a conviction, was "over the same matter [as the other assault] [and] was all at the same time." He acknowledged he had served two days in jail and been ordered to attend anger management classes as a result of that conviction. The defendant conceded he had been charged with another assault in 2002 but said it had been dismissed. The defendant further acknowledged that he had a pending misdemeanor theft charge in Sevier County. He said he planned to plead not guilty and proceed to trial on that charge.

The defendant explained that his involvement in the crimes in the instant case arose at a time when he was taking between ten and fifteen pills each of Hydrocodone and Valium every day, which he had been prescribed following a work-related back injury. He said he used the medication, which was paid for by Tenn Care, for approximately three to four years until he was arrested in the instant case, realized that the drugs "kept [his] mind cloudy" and were keeping him "apart from [his] little boy," and decided to stop taking them. He testified he smoked marijuana daily from the age of 16 or 17 until he was in his early twenties and was smoking marijuana two or three times per week at the time of the offenses. He said he had since reduced his marijuana usage to once every month or two and did not believe he had a drug problem.

The defendant testified he was unable to work for over two years as a result of his back injury and lived off the disability benefits his girlfriend received during that time. He said he had been unemployed for approximately a year and a half to two years when the Reynolds brothers, who were "[a] lot younger" than he, and whom he had known for most of their lives, began bringing him one or two small items, such as a television or VCR, and asking his assistance in selling them. Because he was on prescription pain relievers and tranquilizers, he did not question their stories about having gotten the items from their parents' homes. Things then began to escalate. The defendant testified:

> Well, I mean, after I started working and stuff, I moved in with my grandparents and I stayed at their house. And she [the defendant's girlfriend] had a trailer and I'd go back and forth to -- you know, we did have a baby after that, and they would bring stuff up there to her house and leave it there, because they knew where she lived. And they would bring like four-wheelers and different things up there, you know. Anything of value, they would just take it up there and leave it and they'd ask me if I -- you know, if I was interested in buying it. You know, sometimes I did buy a few -- some things; and sometimes I didn't.

The defendant testified that the brothers eventually brought him as many as ten four-wheelers to sell and that, had he been sober, he would have been suspicious about where they had gotten them. He acknowledged he accompanied the brothers to pick up some items, including those taken from the burglarized vacation home. He insisted, however, that he never entered the home, despite his

statement to the police to the contrary, and said he never questioned the brothers' story that a relative had left the items behind in a move. The defendant gave his version of the circumstances surrounding his involvement in that crime:

> That was the same time that I was telling you that John and Albie had me drive them up there to the -- they had everything stacked in one big pile. And they had it down there at the bottom of the hill. They done carried it all and had it all in one big pile. And they used my truck. That's the first time I ever helped them do anything. I mean, I didn't know what they was doing. But I went there and they loaded it up. They told me, like I said, that it was somebody that was kin to their dad and that they had moved out and they left that stuff there.

According to the defendant, he received no more than $500 for his part in the whole enterprise. He said he realized at some point prior to his arrest that he was helping the brothers in a criminal enterprise and told them he no longer wanted to be involved. However, he did not report the brothers because he did not think the police would believe he had not initially known that the items were stolen.

The defendant testified that, after his release from jail, he worked for approximately eight months building custom cabinets until he took a position as a cook at an International House of Pancakes, which was more conveniently located to his home. He stated he had been employed at the restaurant for six months and currently worked between thirty and thirty-five hours per week. In addition, he worked ten hours per week as a landscaper at A-1 Ace Bonding Company. The defendant testified that he had moved in with his mother upon his release from jail and that he could continue living with her should he receive a sentence involving release into the community. He stated that his goals for his life were to work either as a carpenter or mechanic, to gain custody of his young son, and to "live righteously."

On cross-examination, the defendant acknowledged he was physically present at the scenes of all but one of the thefts and burglaries for which he had been convicted. Asked why he had ten ounces of marijuana on him at the time of his arrest, the defendant first replied that it was because he sold it but then said that he had to keep a supply of marijuana in order to keep his girlfriend, who had a problem with the drug, at home. The defendant conceded his presentence report reflected that his mother had reported that she would allow him to live with her only temporarily. He said he intended to get a job, save his money, and find his own place to live. The presentence report, which was admitted as an exhibit, also reflected that two of the defendant's former employers expressed their willingness to rehire the defendant should he be released into the community.

## ANALYSIS

---

**Sentencing**

-4-

On appeal, the defendant challenges the trial court's sentencing determinations. When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

## A. Denial of Alternative Sentencing

The defendant contends that the trial court erred in denying his request for probation, community corrections, or a sentence involving split confinement. He points out that he was presumed to be a favorable candidate for alternative sentencing and asserts that his history of drug abuse would make him eligible for a community corrections sentence. The defendant argues that, in denying alternative sentencing, the trial court failed to consider the following: his conduct neither caused nor threatened bodily injury; he provided a degree of assistance to law enforcement officials in recovering some of the stolen property; he stopped his prescription drug abuse and reduced his use of marijuana; he has maintained steady employment since his arrest and two of his employers are willing to rehire him; and he has taken steps to gain custody of his young son, including attending parenting classes. The State argues that under the circumstances of the case, which include the defendant's failure to take full responsibility for his actions and his lack of candor before the trial court, the trial court property denied alternative sentencing. We agree with the State.

An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). Tennessee Code Annotated section 40-35-303(a) states

that a defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed upon the defendant is eight years or less. Even if eligible, however, the defendant is not automatically entitled to probation as a matter of law. See id. § 40-35-303(b). The burden is upon the defendant to show that he is a suitable candidate for probation. Id.; State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527. Additionally, "[c]andor is a relevant factor in assessing a defendant's potential for rehabilitation, and the lack of candor militates against the grant of probation." State v. Souder, 105 S.W.3d 602, 608 (Tenn. Crim. App. 2002) (citations omitted).

The presumption in favor of alternative sentencing may be overcome by facts contained in the presentence report, evidence presented by the State, the testimony of the accused or a defense witness, or any other source, provided it is made part of the record. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). A trial court may deny alternative sentencing and sentence a defendant to confinement based on any one of the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1).

In denying alternative sentencing, the trial court relied, among other things, on the fact that the defendant had attempted to minimize his role in the crimes, his poor societal record, his admission that he sold marijuana, his lack of candor before the trial court, and the egregious nature of the crimes, including the complete destruction of the vacation home. The trial court's ruling states in pertinent part:

In considering alternative sentences in these cases, Community Corrections, probation, split confinement, and all those kinds of things, I think the likelihood of you following the rules of probation, Mr. Cable, are very poor. And I base that upon several things. Number one is your history of irresponsibility as to working and taking care of your family responsibilities. The other is your history of drug abuse at the expense of the Tenn Care Program -- and also illegal drug, marijuana. And you continued to smoke marijuana and break the law even after you were arrested on these charges, which to me is a big telling thing about whether or not a person can be expected to follow the rules of release. Community Corrections is even more strict than probation, and I think the extent of this criminal activity tells me that your success on Community Corrections would not be very likely.

You do, you continue to minimize your responsibility for everything that you've ever been involved in -- from drug use to the marijuana for your girlfriend, you wouldn't have done this if you hadn't have been stoned, none of which I believe. And you continued -- I mean, when you're testifying, you don't even pay attention to what you say and have any real regard for the truth. You were asked whose trailer this was that you were charged with vandalizing. I don't know. And then the very -- thirty seconds later, you said you were living with some guy and I said did it belong to the guy you lived with and you said yeah. I mean, it's like your attitude about the truth is poor and your attitude about this whole thing to the officer was -- you just had no concern for anybody or anything they had. And, I mean, you helped totally destroy a home. Beat anything I'd ever heard of. And a self-confessed pot dealer. So, I think a lack of confinement would depreciate the seriousness of this.

We conclude that the record fully supports the trial court's denial of alternative sentencing. At the sentencing hearing, the defendant admitted that he has three children whom he does not support. In an obvious unguarded moment, he also admitted he sold marijuana but then immediately changed his story, stating that he kept the marijuana for his ex-girlfriend's use. Throughout the course of his testimony, the defendant attempted to shift the responsibility for his actions to others, essentially blaming his vandalism and assault convictions on his ex-wife, his arrest for possession of marijuana on his ex-girlfriend, and his theft and burglary convictions on the Reynolds brothers, who, according to his claim, misled him into believing that they had a legitimate source for the items he helped them sell. Even though the defendant acknowledged some participation in the crimes, he also attempted to portray himself as a victim of his drug addiction and of the Reynolds brothers' manipulation. As the trial court noted, the defendant was also clearly untruthful in his testimony, offering vague and conflicting accounts of his prior crimes and his participation in the crimes in the instant case.

The defendant argues there was nothing sufficiently shocking about his crimes to warrant a sentence of full confinement in order to avoid depreciating the seriousness of the offenses. He also argues that his efforts to improve his situation and regain custody of his son belie the trial court's

findings that he will be unable to comply with the rules and requirements of a community corrections program.  We respectfully disagree.

The Community Corrections Act permits trial courts to sentence certain nonviolent felony offenders, who are either not eligible for probation, or not good candidates for probation, to community-based alternatives to incarceration.  State v. Grigsby, 957 S.W.2d 541, 548 (Tenn. Crim. App. 1997); see Tenn. Code Ann. §§ 40-36-103, -104 (2003).  The legislature's purpose in enacting the Community Corrections Act was to "provide 'a degree of flexibility' consistent with societal aims not previously available under the more traditional methods of correction."  State v. Kendrick, 10 S.W.3d 650, 655 (Tenn. Crim. App. 1999).

However, in order to qualify for sentencing under the Community Corrections Act, an offender must meet all of a number of minimal requirements, including:

> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]
>
> (F) Persons who do not demonstrate a pattern of committing violent offenses[.]

Tenn. Code Ann. § 40-36-106(a)(1)(E), (F) (2003).  Arguably, the defendant's misdemeanor assault convictions demonstrate a past pattern of behavior indicating violence such as to render him ineligible for a community corrections sentence.  But see State v. Artez L. Moreis, No. W2002-00474-CCA-R3-CD, 2003 WL 1860537, at *15 (Tenn. Crim. App. Apr. 2, 2003), perm. to appeal denied (Tenn. Dec. 8, 2003) (concluding that defendant's three convictions for simple assault several years earlier did not represent a pattern of violence that would make him ineligible for community corrections).  Regardless of eligibility, the record supports the trial court's finding that the defendant would be unlikely to comply with the requirements of a community corrections sentence.  The defendant admitted he still used marijuana after his arrest and yet said he did not believe he had a drug problem. From his testimony, it is also abundantly clear that he is unwilling to accept responsibility for his own actions.  Moreover, the egregious nature of the defendant's crimes, which involved multiple victims and thousands of dollars worth of stolen items, including $64,500 from the burglarized vacation home, supports a finding that confinement in this case is necessary to avoid depreciating the seriousness of the offenses.

## B.  Consecutive Sentences

The defendant also contends that the trial court erred in ordering that he serve all of his sentences consecutively on the basis that he has an extensive criminal history.  The defendant argues that his criminal history is insufficiently extensive to support consecutive sentencing and, in support, cites cases in which defendants whose criminal records spanned a greater length of time received only partially consecutive sentences.  The State argues that the trial court did not err in finding that the defendant's criminal record, which, including the convictions in the instant case, consisted of ten

felony and several misdemeanor convictions, warranted his classification as an offender whose record of criminal activity is extensive. We agree with the State.

Tennessee Code Annotated section 40-35-115(b) provides that it is within the trial court's discretion to impose consecutive sentencing if it finds by a preponderance of the evidence that any one of a number of criteria apply, including that "[t]he defendant is an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2) (2003). In ordering consecutive sentences, the trial court made the following findings:

> Now, as to the manner of service of these sentences and whether or not they will be consecutive or concurrent. I find by a preponderance of the evidence, by a greater -- I mean, clear and convincing evidence, in my opinion, that Mr. Cable has an extensive history of criminal activity. Not just criminal activity, but also criminal convictions. These. And the fact that they were all tried at the same time, I think, makes no difference. The State could have tried them one right after the other and then they would have all been separate convictions.

The record supports the trial court's imposition of consecutive sentencing based on the defendant's extensive criminal record. As the State points out, current offenses may be used in determining criminal history for the purposes of consecutive sentencing. See State v. Cummings, 868 S.W.2d 661, 667 (Tenn. Crim. App. 1992). Moreover, the defendant's record of prior convictions, which does not include the ten felony convictions in the instant case, covers three and a half pages of his presentence report and reflects an extensive criminal history, including a 1996 burglary conviction, a 1996 reckless driving conviction, a 1998 assault conviction, a 1999 assault conviction, a 1998 child endangerment conviction, a 2003 assault conviction, and a 2003 speeding conviction. Accordingly, we affirm the trial court's imposition of consecutive sentencing on the basis of the defendant's record of extensive criminal activity.

### C. Excessive Fines

Lastly, the defendant contends that the trial court erred in approving the excessive fines fixed by the jury without any consideration of the relevant facts and sentencing principles, including his ability to pay. The State argues, *inter alia*, that the total amount of the fines fixed by the jury and approved by the trial court was appropriate in light of the defendant's prior criminal record, lack of candor, and poor potential for rehabilitation, as well as the serious nature of the crimes of which he stands convicted. Once again, we agree with the State.

As an initial matter, we note that although both the defendant and the State refer to a total of $32,000 in fines, and the judgments reflect that total amount, the transcript of the sentencing hearing reveals that no fine was imposed in Count 2 of the indictment. When there is a discrepancy between the transcript of a proceeding and the judgment entered, the transcript controls. See State v. Davis, 706 S.W.2d 96, 97 (Tenn. Crim. App. 1985).

In imposing a fine within the limits set by the jury, a trial court should consider the principles of the 1989 Sentencing Act, including "'the defendant's ability to pay that fine, and other factors of judgment involved in setting the total sentence.'" State v. Taylor, 70 S.W.3d 717, 723 (Tenn. 2002) (quoting State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993)). Other factors which should be considered include the defendant's prior history, potential for rehabilitation, and the circumstances surrounding the offense which are relevant to the defendant's overall sentence. Id. (citing State v. Blevins, 968 S.W.2d 888, 895 (Tenn. Crim. App. 1997)). In addition, as the State points out, "[t]he seriousness of a conviction offense may also support a punitive fine." Id. (citing State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996)).

Applying the above principles to this case, we note that the defendant has a substantial criminal history and is a poor candidate for rehabilitation. We also note that he has no assets and that his income, according to his mother's statement to the probation officer who prepared his presentence report, is low. The defendant, however, testified at his sentencing hearing that he has work experience both as a carpenter and as a mechanic and that his goal is to work in one of those two fields. Presumably, therefore, he has the potential for earning a higher income, especially if he remains sober and works regularly, and thus will have the potential to pay the fines and restitution ordered in this case.

Furthermore, the defendant's offenses are serious crimes that arose from his engaging in an ongoing criminal enterprise that involved breaking into homes and stealing thousands of dollars worth of personal property, including the entire contents of an out-of-state resident's vacation home. By contrast, the $27,500 fine that our supreme court found to be excessive in Taylor was based on the defendant's conviction for driving on a revoked license, second offense. Id. at 719. In reaching its conclusion that the fine was excessive, the Taylor court noted that the accident that gave rise to the convictions in the case had apparently not resulted in either personal injury or property loss. Id. at 723. Unlike the defendant in Taylor, the defendant's crimes have resulted in substantial property loss as well as severe emotional devastation to the victims, as evidenced by the victims' impact statements contained in the presentence report. We conclude, therefore, that the trial court did not err in approving $22,000 in fines set by the jury for the defendant's offenses.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court. However, we remand to the trial court for entry of corrected judgments in Count 8 to reflect that the sentence is to be run consecutively to the sentence in Count 7, and in Count 2 to reflect that no fine was imposed for that count.

_____
ALAN E. GLENN, JUDGE